**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF TENNESSEE**

**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **PATRICIA JO MCLEAN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:11-cv-00236** |
| **v.** | ) | **Judge Nixon/ Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,**[1] | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.

Docket No. 16. Defendant has filed a Response, arguing that the decision of the Commissioner

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February
14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should be substituted for
Commissioner Michael J. Astrue as the Defendant in this suit. No further action needs to be
taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security
Act, 42 U.S.C. §405(g).

was supported by substantial evidence and should be affirmed. Docket No. 24. Plaintiff has filed

a Reply (Docket No. 26), and Defendant has filed a Sur-reply (Docket No. 29). Also filed is the

Declaration of Dennis V. Ford, "Acting Chief of Court Case Preparation and Review Branch 3 of

the Office of Appellate Operations, Office of Disability Adjudication and Review, Social

Security Administration." Docket No. 25. As will be explained in greater detail below, Mr.

Ford's Declaration relates to an error in the hearing transcript.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her applications for DIB and SSI on August 8, 2006, with a protective

filing date of June 27, 2006, alleging that she had been disabled since February 1, 2000, due to

"3 bulging disc [*sic*] in back, 2 bulging discs in neck messed up, hepatitis c, liver messed up and

kidneys messed up, crushed right hip, nerve damage, can't see small print, seizures, arthritis,

[and] chronic lung disease." Docket No. 14, Attachment ("TR"), TR 109-13, 114-19, 140-49.

Plaintiff's applications were denied both initially (TR 55-56, 57-58) and upon reconsideration

(TR 59-60, 61-62). Plaintiff subsequently requested (TR 76) and received (TR 26-54) a hearing.

Plaintiff's hearing was conducted on June 16, 2009, by Administrative Law Judge ("ALJ") John

R. Daughtry. *Id.* Plaintiff and vocational expert ("VE"), Dr. Kenneth N. Anchor, appeared and

testified. *Id.*

On July 1, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff

was not disabled within the meaning of the Social Security Act and Regulations. TR 11-25.

Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2005.

2. The claimant has not engaged in substantial gainful activity since February 1, 2000, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: seizure disorder, degenerative disc disease of the lumbar spine, anxiety disorder, chronic obstructive pulmonary disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she would be limited to lifting/carrying 50 pounds occasionally, 25 pounds frequently; standing/walking of up to 6 hours in an 8 hour workday; sitting of up to 6 hours in an 8 hour workday; performing pushing or pulling actions only occasionally and must avoid concentrated exposure to airborne contaminants. The claimant could perform frequent postural activities except that she would be precluded from climbing ladders, ropes, or scaffolding, and balancing would be permitted only occasionally. The claimant would also have some additional limitations imposed by her epilepsy, such as avoiding unprotected heights and moving machinery. She would be able to carry out at least simple directions, maintain concentration and persistence sufficient to perform routine and/or repetitive 1-2 step tasks. Production pace work and assembly line work would be precluded. She would be unable to interact with the public on a regular basis, but can interact with co-workers and supervisors. She can adapt to gradual and

infrequent changes.

6.       The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.       The claimant was born on June 8, 1960 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8.       The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.       The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).

10.      Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a, 404.1568(d), 416.969, 416.969a, and 416.968(d)).

11.      The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2000 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 16-24.

On July 31, 2009, Plaintiff timely filed a request for review of the hearing decision. TR 106-08. On January 14, 2011, the Appeals Council issued a letter declining to review the case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1)     If the claimant is working and the work constitutes

substantial gainful activity, benefits are automatically denied.

(2)     If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)     If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4)     If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)     Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 CFR 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability

---

[2] The Listing of Impairments is found at 20 CFR, Pt. 404, Subpt. P, App. 1.

determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred because: 1) the ALJ "improperly rejected" consultative examiner Dr. Frederick G. Grieve's opinion while according significant weight to the opinion of Dr. Larry W. Welch, the non-examining physician; and 2) the hypothetical posed to the VE which underlies the denial of this claim did not accurately describe Plaintiff's mental limitations. Docket No. 17. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be remanded, or in the alternative, a new hearing should be granted. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

8

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Weight Accorded to Physicians' Opinions

Plaintiff maintains that the ALJ "improperly rejected" the restrictions opined by consultative examiner Dr. Grieve in favor of those of non-treating, non-examining physician Dr. Welch. Docket No. 17. Specifically, Plaintiff takes issue with the ALJ's decision not to accord significant weight to Dr. Grieve's findings that Plaintiff was severely impaired in her abilities to relate to others and to tolerate the stress and pressure of normal work activity.[3] *Id.*

Defendant responds that the ALJ properly assessed Dr. Grieve's opinion, and appropriately accepted the parts of his opinion that were consistent with the evidence of record, and discounted the restrictions that were not. Docket No. 24. Defendant contends that the two restrictions that Plaintiff argues the ALJ "improperly rejected" were, in fact, properly rejected because they were unsupported by the record as a whole and inconsistent with Dr. Grieve's own report. *Id.* Defendant also argues that Plaintiff's contention is erroneously based on solely one

---

[3] Plaintiff does not address this statement of issue in her Reply brief. Docket No. 26.

factor, the examining relationship, while ignoring other factors the ALJ must consider when weighing opinion evidence such as supportability and consistency.[4]  *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1)  Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2)  Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion . . . .
>
> (3)  Supportability. The more a medical source presents relevant evidence to support an opinion, particularly

---

[4]  Defendant does not address this statement of issue in its Sur-Reply brief.  Docket No. 29.

medical signs and laboratory findings, the more weight we
will give that opinion. The better an explanation a source
provides for an opinion, the more weight we will give that
opinion . . . .

(4) Consistency. Generally, the more consistent an opinion is
with the record as a whole, the more weight we will give to
that opinion.

(5) Specialization. We generally give more weight to the
opinion of a specialist about medical issues related to his or
her area of specialty than to the opinion of a source who is
not a specialist.

. . .

20 CFR 416.927(d) (emphasis added). *See also* 20 CFR 404.1527(d).

As mentioned above, Plaintiff maintains that the ALJ "improperly rejected" the
restrictions opined by consultative examiner Dr. Grieve in favor of those of non-treating, non-
examining physician Dr. Welch. Docket No. 17. It is undisputed that neither Dr. Grieve nor Dr.
Welch is a treating physician of Plaintiff, and their opinions do not trigger the treating physician
rule. Plaintiff, however, takes issue with the ALJ's decision not to accord significant weight to
Dr. Grieve's findings that Plaintiff was severely impaired in her abilities to relate to others and to
tolerate the stress and pressure of normal work activity. *Id*.

The ALJ discussed Dr. Grieve's opinions as follows:

The claimant's medical records also suggest a history of anxiety
disorder, however the record is limited. The claimant reported
symptoms of anxiety and depression to Dr. Frederick G. Grieve,
who performed a psychological CE on the claimant on 22
December 2006.[5] Dr. Grieve diagnosed her with anxiety disorder.

_____

[5] While the ALJ noted December 22, 2006, as the appointment date, the record shows
that the appointment was on December 12, 2006. *Compare* TR 17 *with* TR 229.

He also diagnosed her with bereavement rather than a depressive disorder, which he believed was more consistent with the claimant's condition, as she had recently lost her husband.

. . .

In activities of daily living, the claimant has mild restriction. The claimant is able to perform basic daily tasks such as making coffee and taking care of her personal hygiene, but activities of greater difficulty are somewhat impacted by her feelings at the time. She has indicated that she is able to complete some household chores, such as cooking meals.

In social functioning, the claimant has moderate difficulties. The claimant has good relationships with her family members, but has expressed that she is socially isolated and does not have an interest in obtaining or maintaining friendships.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant is able to understand, retain, and follow simple instructions, and her ability to sustain attention to perform simple repetitive tasks is minimally impaired, as shown by standardized testing performed by Dr. Frederick Grieve.

. . .

The claimant's anxiety disorder does not result in the complete inability to function independently outside the area of her home. While the claimant has indicated that she has limited her activities out of the home out of the fear of having a seizure, and is not interested in friendship, those limitations nor anything else in the claimant's medical records suggest that she is completely unable to function independently outside her home.

. . .

In his report subsequent to a consultative psychological examination, Dr. Grieve indicated that the claimant had a global assessment of functioning (GAF) score of 57, suggesting moderate symptoms. He determined that she was able to understand, retain, and follow simple directions. He also determined that she was able to sustain attention sufficient to perform simple repetitive tasks. *These sections were given substantial weight in determining her residual functional capacity as consistent with the record as a whole.* He indicated that the claimant's ability to psychologically relate to others was severely impaired, along with her ability to

> tolerate the stress and pressure of normal work activity. *Those parts of his opinion were given less weight because the record as a whole suggests a somewhat lower level of impairment.*

TR 17-22 (internal citations omitted)(footnote and emphasis added).

As can be seen, the ALJ did not "reject" Dr. Grieve's opinion; rather, the ALJ accepted the parts of Dr. Grieve's opinion that were consistent with the evidence of record, and appropriately accorded less weight to the findings that were not. The ALJ discussed Dr. Grieve's opinion, and articulated his reasons for accepting and rejecting Dr. Grieve's findings. This evaluation is proper.

Moreover, regarding Plaintiff's memory, the ALJ accepted Dr. Grieve's opinion that Plaintiff's performance on several memory-related tests was "fair." TR 21, 231. Thus, the ALJ made "[a]llowances for her memory problems" in his RFC determination. *Id*. Additionally, the ALJ incorporated into his RFC determination Dr. Grieve's assessment that Plaintiff could carry out simple instructions and maintain concentration/persistence sufficient to perform routine and/or repetitive 1-2 step tasks. TR 20, 233.

Regarding the ALJ's determination of Plaintiff's restricted ability to relate to others, the ALJ found that Plaintiff "would be unable to interact with the public on a regular basis, but can interact with co-workers and supervisors." TR 20. This determination is supported by the narrative within Dr. Grieve's report, by Dr. Welch's Mental RFC assessment, and by Plaintiff's own testimony.

In the narrative of his report, Dr. Grieve indicated:

> Ms. Mclean reported good relationships with her mother, daughter,

and son. She stated that she sees her mother and daughter every day, but only talks with her son once or twice a month. Ms. Mclean reported that her husband died in 2005, two days before they were going to close on their house and move to Tennessee. She indicated that she has no friends and remains isolated at home. Ms. Mclean stated that she does not go to church at this time. She reported that she has participated in one fight. She stated that in 2002 she punched another woman who was flirting with her husband and would not stop. Finally, she indicated that she tries to ignore criticism from others, and is generally successful at it.

. . .

. . . Ms. Mclean indicated that she is socially isolated and was not interested in obtaining or maintaining friendships. ..

. . .

The HTTP assesses major patterns of personality and emotional functioning. Its purpose is to examine unconscious processes. Ms. Mclean put forth appropriate effort on this test for interpretive purposes. Ms. Mclean's drawings suggest that she is focused on the past, is socially isolated, feels a need for support, and does not allow her emotions to influence her decision-making processes. She may be feeling pressures from her mother, and may wish to have a buffer between herself and her mother.

The BSI-III is a self-report measure that reflects the psychological symptom patterns of psychiatric and medical patients, as well as community nonpatient respondents. Ms. Mclean's responses did not indicate any psychological difficulties. Her highest level of reported concern was with somatic symptoms.

TR 230-33.

In his Mental RFC assessment, Dr. Welch opined that Plaintiff was not significantly limited in any aspect of her social functioning. TR 286. Plaintiff testified during her hearing that she did not have problems interacting with people at the grocery store when shopping and that she attended church "once in a while." TR 42-43.

The ALJ's decision demonstrates that he considered all of the medical and testimonial evidence of record before determining that Dr. Grieve's opinion regarding Plaintiff's ability to relate to others was inconsistent with the evidence of record. TR 22. Based on his thorough examination of the record, the ALJ determined that the overall evidence indicated a lower level of impairment than opined by Dr. Grieve, and he appropriately determined that Plaintiff's social interaction at work should be limited to co-workers and supervisors. TR 20.

Similarly, after assessing the evidence of record, the ALJ determined that Plaintiff's ability to tolerate the stress and pressure of normal work activity was not as severe as Dr. Grieve had opined. Dr. Grieve attributed his opined restriction to Plaintiff's anxiety, depression, and seizures. TR 233. The ALJ specifically discussed her anxiety and depression as stated above and her seizures as follows:

> In terms of the claimant's alleged work disruptions due to seizure disorder, there is evidence that the claimant has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application. With the exception of the emergency room visits on 23 March 2005 there is no medical evidence in the record of repeated hospitalizations, and the claimant's seizure disorder appears to be properly controlled when medicated. Further, allowances for her epilepsy were made when formulating the residual functional capacity.

TR 21 (internal citations omitted).

As discussed above, the ALJ ultimately determined that Plaintiff's ability to tolerate the stress and pressure of work activity was impaired, but not severe. In order to accommodate Plaintiff's restriction, the ALJ found that she would be precluded from production pace and assembly line work, but could adapt to gradual and infrequent changes. TR 20. This

determination was echoed by Dr. Welch, who opined that Plaintiff was "able to adapt to routine, not frequent or fast-paced change." TR 22, 287.[6]

As has been demonstrated, the record in the case at bar is replete with doctors' evaluations, medical assessments, test results, and testimony, all of which were discussed by the ALJ. The ALJ considered the evidence of record, reached a reasoned decision, and articulated the basis for his accepting or discounting physician findings, as well as the weight accorded to each physician's opinion; and the ALJ's decisions were properly supported by substantial evidence. The Regulations do not require more. Accordingly, Plaintiff's claim fails.

## 2. Hypotheticals Presented to Vocational Expert ("VE")

Plaintiff asserts that the ALJ failed to include Dr. Grieve's assessed mental limitations in a hypothetical question to the VE, and also failed to "accurately advise the VE as to the mental restrictions assessed by Drs. Stodola and Welch, who reviewed the Grieve report." Docket No. 17 at 5.[7] Plaintiff argues that the VE cited jobs that are beyond her RFC because the ALJ did not

------

[6] On August 22, 2007, Dr. Welch completed a Mental RFC assessment regarding Plaintiff. TR 285-87. In it, he opined that Plaintiff was moderately limited in her abilities to: understand and remember simple instructions; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting. *Id*. Dr. Welch found that Plaintiff was not significantly limited in any other areas. *Id.* Additionally, Dr. Welch noted that Plaintiff's social interaction abilities were within normal limits, and that she could: set and carry out most long-range goals with occasional assistance; avoid major hazards; and adapt to infrequent, gradual changes. *Id.* The ALJ accorded Dr. Welch's opinion great weight despite his status as a non-treating and non-examining physician because "[t]hese findings are consistent with the claimant's medical records." TR 22.

[7] Although Plaintiff's initial "Argument" paragraphs contend that the ALJ failed to include Dr. Grieve's restrictions (as well as those of Dr. Stodola) in the hypotheticals posed to

adequately advise the VE of the applicable restrictions. *Id*. at 7. Plaintiff contends that because

the hypotheticals were flawed, the ALJ could not rely on the VE's answers to the hypotheticals

when determining Plaintiff's disability. *Id*. at 5. Plaintiff contends that *Ealy v. Commissioner,*

594 F.3d 504, 517 (6th Cir. 2010) controls, and supports her assertion that VE testimony in

response to a hypothetical can only serve as substantial evidence when it accurately portrays the

Plaintiff's limitations. Docket No. 17 at 7. Plaintiff further asserts that because she was

unrepresented at the hearing the "record is silent" on whether Dr. Grieve's limitations would

preclude her from all jobs. *Id*.[8]

Defendant responds that, although the ALJ did not include every "sub-category of

moderate limitations used to form Dr. Welch's ultimate functional capacity assessment," the

ALJ's hypothetical questions accurately presented Dr. Welch's ultimate functional capacity

assessment to the VE. Docket No. 24 at 15. Specifically, Defendant contends that the law does

not require that every sub-category from Section I of the assessment be explicitly included in the

hypotheticals, because the Section I sub-categories are included in the ultimate Section III

conclusions, as the Section III conclusions are based upon the Section I findings. *Id*. at 15-17.

Defendant notes that the ALJ's hypothetical actually included limitations, such as being limited

to simple directions and having no contact with the general public, that placed harsher

restrictions on Plaintiff's ability to work than did assessed by Dr. Welch. *Id.*

---

the VE, Plaintiff's actual argument and analysis focuses only on the mental limitations assessed
by Dr. Welch, and their purported exclusion in the hypotheticals. *See* Docket No. 17 at 5-8.

    [8] Although Plaintiff was unrepresented at the hearing, Plaintiff knowingly waived her
right to representation at her hearing. TR 31. Again, although Plaintiff mentions Dr. Grieve's
limitations, her argument focuses on those of Dr. Welch.

Plaintiff's Reply (Docket No. 26) and Defendant's Sur-reply (Docket No. 29) discuss the applicability of *Ealy v. Commissioner*, 594 F.3d 504, 517 (6th Cir. 2010). Plaintiff argues that *Ealy* applies and requires the ALJ to include all restrictions (including those of Sections I and III) in the hypothetical questions posed, while Defendant contends that *Ealy* is inapplicable to the case at bar because the ALJ in *Ealy* failed to reference the restrictions contained in Section III of *Ealy's* Mental RFC assessment, where the ALJ in the case at bar appropriately included all of Plaintiff's Section III limitations in his hypotheticals.

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 CFR 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). In the presence of nonexertional limitations, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Secretary*, 667 F.2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's limitations. *See Varley*, 820 F.2d at 779 (*quoting O'Banner v. Secretary*, 587 F.2d 321, 323 (6th Cir. 1978)).

The law is well-settled, and the parties do not dispute, that an ALJ's hypothetical questions need only include the limitations the ALJ finds credible and supported by the evidence of record. *See, e.g., Gant v. Commissioner*, 372 Fed. Appx. 582, 586 (6th Cir. 2010); *Foster v.*

*Halter*, 279 F.3d 348, 356 (6th Cir. 2002); *Blacha v. Secretary*, 927 F.2d 228, 231 (6th Cir. 1990). Instead, the parties here argue over the scope of the limitations that must be included in the hypothetical questions. *See* Docket Nos. 17, 24, 26, 29. As noted above, the parties dispute the applicability of *Ealy v. Commissioner*, 594 F.3d 504, 517 (6th Cir. 2010). Plaintiff contends that *Ealy* controls, as the situation in *Ealy* mirrors the situation in the instant case because like here, the ALJ did not include every limitation in his hypothetical, and the Commissioner argued, *inter alia,* that the ALJ could limit the information provided to that contained in Section III of the Mental FRC assessment (without describing the individual restrictions contained in Section I of the assessment). Docket No. 26 at 2. While those situational parallels may be true, *Ealy* does not resolve the question, much less control, whether an ALJ must include Section I limitations in his hypothetical questions or whether it is sufficient to include only those limitations contained in Section III. In fact, the Sixth Circuit explicitly stated in *Ealy*:

> Though the parties argue at length whether and under what circumstances it is sufficient for an ALJ to include in a vocational hypothetical only the Section III Functional Capacity Assessment and not also the more specific checked limitations in Section I, *we need not resolve this issue*.

*Ealy,* 594 F.3d at 516 (emphasis added).

Thus, to the extent that Plaintiff relies on *Ealy* as support for her contention that the ALJ's hypothetical was deficient because it did not include all the Section I limitations, Plaintiff's argument fails.

The Sixth Circuit's decision in *Ealy* turned on whether the ALJ's hypothetical question provided the VE with "a fair summary" of the conclusions contained in the Mental RFC

assessment[9]. *Id.* Thus the central inquiry to be had is whether the ALJ's hypothetical question provided the VE with "a fair summary" of the conclusions contained in the Mental RFC assessment. The *Ealy* Court determined that the ALJ in that case had not done so. *Id.*

With regard to the instant case, the ALJ's hypothetical questions posed to the VE and his answers thereto are as follows:

> Q    Okay, I would like for you to consider a couple of hypothetical questions. In your response to the hypothetical questions that I posed, please respond in a manner that is consistent with information contained in the dictionary of occupational titles. If you use other references, please indicate when you're doing so and what resources you're relying on. For purposes of the hypothetical questions that I pose, please assume an individual of the claimant's age with the claimant's educational background and past work history. In the first hypothetical, please assume a hypothetical individual that can lift up to 50 pounds on an occasional basis; up to 25 pounds on a frequent basis; can stand or walk for up to six hours in an eight hour work day; can sit for up to six hours in an eight hour work day; can engage in unlimited pushing and pulling with the upper extremities; frequent postural activities, climbing, stooping, kneeling, crouching, crawling, occasional balance. The hypothetical individual should avoid climbing ladders, ropes, and scaffolds. Hypothetical individual would be on seizure precautions due to history of seizure activity and should avoid workplace hazards, unprotected heights, moving machinery. The hypothetical individual should avoid concentrated exposure to airborne contaminants. This hypothetical individual also has mental limitations, but can understand, remember, and carry out simple and detailed directions; can maintain persistence and concentration necessary to perform simple and detailed tasks; can interact with the general public, co-workers, and supervisors; and can adapt to routine and frequent changes to the workplace. Could such a hypothetical individual perform the claimant's

_____

[9] The conclusions of a Mental RFC assessment are contained in Section III of that assessment.

past work of record?

A With that profile, yes. Past work could be performed.

Q Could such a hypothetical individual perform other jobs that exist in the national or regional economy?

A Yes, there would be other jobs.

. . .

Q Okay. Second hypothetical. I'm only changing one of the physical limitations, that being pushing and pulling on an occasional basis with the upper extremities. Mental limitations, let me restate that. All of the physical limitations from the first hypothetical question remain intact with the exception of the occasional pushing and pulling involving the upper extremities. Mental limitations would be that the hypothetical individual can understand, remember, and carry out simple directions, can maintain concentration and persistence necessary to perform routine, repetitive one to two step tasks in a work environment that does not involve production rate pace assembly line work. Hypothetical individual should have no contact with the general public, but can interact with coworkers and supervisors and can adapt to gradual and frequent[10] changes in the work environment. Could such a hypothetical individual perform the claimant's past work of record?

A No. Past work would not be available if she could not deal with the public.

Q Could such a hypothetical individual perform other jobs that exist in the national or regional economy?

A Yes. There would be other such jobs.

Q Please identify.

A Some additional examples would be job of table worker, DOT 783.687-030, with over 1,800. The job of fast, let's see, packer, and the DOT numbers I'm giving are just

---

[10] A review of the record of the hearing revealed an error; the ALJ's actual statement was "adapt to gradual and infrequent changes in the work environment." *See* Docket No. 25, Declaration of Dennis V. Ford.

representative DOT's. Usually, there's a cluster of them,
but representative DOT number for packer is 920.685-026,
with over 2,300 such jobs in the aggregate. Another
example of such work would be that of poultry cleaner,
DOT 525.687-074, with over 700 such jobs.

TR 47-50 (footnote added).

Plaintiff argues that since the VE was not privy to all of Dr. Welch's individual Section I

findings, he rendered answers based upon incomplete information such that the ALJ could not

rely on his answers as substantial evidence for his disability determination. Docket No. 17 at 6-7.

Specifically, Plaintiff contends that the VE was unaware of Dr. Welch's findings that Plaintiff

had moderate restrictions in understanding and remembering simple instructions; moderate

restrictions in the ability to sustain an ordinary routine without special supervision; limited

adaptability; and moderate limitations in her ability to complete a normal workday without

interruptions from her psychologically based symptoms and to perform at a consistent pace

without an unreasonable number of rest periods. *Id.* As illustrated by the ALJ's second

hypothetical quoted above, however, he expressly noted Plaintiff's memory restrictions; her

ability to interact with supervisors, but not the general public; her ability to adapt to gradual and

infrequent changes; and her inability to perform fast-paced assembly or production work.

Accordingly, the ALJ's hypothetical question properly provided the VE with "a fair summary" of

the conclusions contained in the Mental RFC assessment.

Because the ALJ in the case at bar provided the VE with "a fair summary" of the

conclusions contained in the Mental RFC assessment, this case is distinguishable from *Ealy*. The

ALJ's decision here specifically addressed Plaintiff's nonexertional limitations, as discussed

above. TR 19-22. Additionally, the ALJ's hypothetical questions posed to the VE incorporated

Plaintiff's nonexertional limitations, as well as Plaintiff's age, education, work experience, residual functional capacity for medium work, and postural limitations. *See* TR 47-51. Moreover, the ALJ included in his hypothetical questions those limitations that he found credible and supported by medical evidence of record. The ALJ's hypothetical questions, therefore, accurately represented Plaintiff's limitations, both exertional and nonexertional, as determined by her RFC, and the ALJ's hypothetical questions provided the VE with "a fair summary" of the conclusions contained in Dr. Welch's Mental RFC assessment. Thus, the ALJ properly relied on the VE's answers to the hypothetical questions to prove the existence of a significant number of jobs that Plaintiff could perform. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary*, 823 F.2d 922, 927-928 (6th Cir. 1987); and *Varley*, 820 F.2d at 779. Plaintiff's claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985),

*reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES

United States Magistrate Judge