IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PATRICIA JO MCLEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:11-cv-00236 |
| v. | ) | |
| | ) | Judge Nixon |
| CAROLYN W. COLVIN, | ) | Magistrate Judge Knowles |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Plaintiff Patricia Jo McLean's Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 16), filed with a supporting memorandum (Doc. No. 17). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition (Doc. No. 24), to which Plaintiff filed a Reply (Doc. No. 26). The Commissioner then filed a Sur-Reply. (Doc. No. 29.) Magistrate Judge Knowles subsequently issued a Report and Recommendation ("Report"), recommending that Plaintiff's Motion be denied and the final decision of the Commissioner be affirmed. (Doc. No. 30 at 2.) Plaintiff filed Objections to the Report (Doc. No. 31), and Defendant filed a Response to Plaintiff's Objections (Doc. No. 32). Upon review of the record, the Court **ADOPTS** the Report in its entirety, **DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of the Commissioner.

1

# I. BACKGROUND

## A. Procedural Background

Plaintiff filed applications for Title II Disability Insurance Benefits ("DIB") (Tr. 109–13)[1] and Title XVI Supplemental Security Income ("SSI") (Tr. 114–19) on August 8, 2006.[2] For both applications, Plaintiff declared an onset date of February 1, 2000. (Tr. 135.) The Social Security Administration ("SSA") initially denied both claims on January 3, 2007 (Tr. 55–58), and again after reconsideration on August 22, 2007 (Tr. 59–62).

Plaintiff filed a timely written request for a hearing before an Administrative Law Judge ("ALJ") on September 24, 2007. (Tr. 76.) The hearing took place before ALJ John R. Daughtry on June 16, 2009. (Tr. 26–54.) Plaintiff and vocational expert ("VE") Kenneth Anchor testified at the hearing. (*Id.*) ALJ Daughtry denied Plaintiff's claim on July 1, 2009 (Tr. 11–13), making the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2005.

2. The claimant has not engaged in substantial gainful activity since February 1, 2000, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: seizure disorder, degenerative disc disease of the lumbar spine, anxiety disorder, chronic obstructive pulmonary disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR

---

[1] An electronic copy of the administrative record is docketed in this case at Document Number 14.

[2] Plaintiff previously filed DIB and SSI applications in 2002 (Tr. 28–29) that the SSA denied later that year (Tr. 136–37).

Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she would be limited to lifting/carrying 50 pounds occasionally, 25 pounds frequently; standing/walking of up to 6 hours in an 8 hour workday; sitting of up to 6 hours in an 8 hour workday; performing pushing or pulling actions only occasionally and must avoid concentrated exposure to airborne contaminants. The claimant could perform frequent postural activities except that she would be precluded from climbing ladders, ropes, or scaffolding, and balancing would be permitted only occasionally. The claimant would also have some additional limitations imposed by her epilepsy, such as avoiding unprotected heights and moving machinery. She would be able to carry out at least simple directions, maintain concentration and persistence sufficient to perform routine and/or repetitive 1-2 step tasks. Production pace work and assembly line work would be precluded. She would be unable to interact with the public on a regular basis, but can interact with co-workers and supervisors. She can adapt to gradual and infrequent changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 8, 1960 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a, 404.1568(d), 416.969, 416.969a, and 416.968(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2000 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

3

(Tr. 16–20, 22–24.)

Plaintiff filed a request for review of the decision on July 31, 2009. (Tr. 106–07.) Plaintiff's request was denied by the Appeals Council on January 14, 2011, rendering ALJ Daughtry's decision the final decision of the Commissioner. (Tr. 1–3.) Plaintiff filed this action on March 14, 2011, seeking judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1386(c). (Doc. No. 1.)

On June 21, 2011, Plaintiff filed a Motion for Judgment on the Administrative Record (Doc. No. 16) along with a supporting memorandum (Doc. No. 17). Defendant filed a Response in Opposition on September 13, 2011 (Doc. No. 24), to which Plaintiff filed a Reply on September 20, 2011 (Doc. No. 26). Defendant filed a Sur-Reply to Plaintiff's Motion on October 5, 2011. (Doc. No. 29.) On April 30, 2013, Magistrate Judge Knowles issued the Report recommending Plaintiff's Motion be denied. (Doc. No. 30.)

On May 6, 2013, Plaintiff asserted three objections to the Report. (Doc. No. 31.) Specifically, Plaintiff objects to Judge Knowles's recommended findings that: (1) substantial evidence supports ALJ Daughtry's decision to favor the psychiatric assessment of non-examining source Dr. Larry W. Welch over that of examining source Dr. Frederick G. Grieve (*id*. at 2–3); (2) the ALJ was not required to include the Section I restrictions from Dr. Welch's Mental Residual Functional Capacity ("RFC") Assessment in his hypothetical question to VE Anchor regarding Plaintiff's RFC (*id*. at 3–5, 7–8); and (3) the ALJ accurately portrayed Dr. Welch's Section III findings in his hypothetical (*id*. at 5–8). On May 20, 2013, Defendant filed a Response to Plaintiff's Objection. (Doc. No. 32.) The Court reviews Judge Knowles's Report, considering Plaintiff's Objection.

4

### B. Factual Background

Plaintiff was born on June 8, 1960 (Tr. 109), and claims disability for arthritis, Hepatitis C, seizures, lung disease, and orthopedic, liver, kidney, and nerve problems (Tr. 63, 67). Plaintiff alleges a disability onset date of February 1, 2000. (*Id.*) At the June 16, 2009, hearing before ALJ Daughtry, Plaintiff waived her right to representation (Tr. 31) and testified that she understood the five-step disability determination process as described to her by the ALJ (Tr. 29–31). When asked to explain in her own words why she filed a claim for disability, Plaintiff listed physical problems, including right hip pain, disc abnormalities in her neck and back, chronic lung disease, Hepatitis C, loss of shoulder function, and seizures. (Tr. 39–40.) Plaintiff also described an inability to read fine print and documents within a couple of feet. (Tr. 44–45.) The physical and mental assessments of Plaintiff's condition contained in the administrative record were primarily conducted as part of the disability determination process after Plaintiff filed DIB and SSI applications. (Tr. 209–27, 229–52, 263–88.)

### 1. Physical History

Plaintiff has sparse medical records to document her alleged ailments before she filed for DIB and SSI. On the morning of March 23, 2004, Plaintiff went to the University Hospital emergency room ("ER") after experiencing a seizure. (Tr. 168.) Plaintiff was discharged later that day, but experienced another seizure after she returned home. (*Id.*) Plaintiff then went to the Coral Springs Medical Center ("CSMC") ER, where Dr. Mohammed Baig assessed her with a seizure disorder, but noted that Plaintiff's cocaine use over the previous three days could have

5

induced her seizures, as her Dilantin[3] level was within therapeutic range. (Tr. 169.) Dr. Richard

Spira performed a CT scan that revealed no acute abnormality. (Tr. 170, 173.) In a consultation

performed on March 24, 2004, Dr. Radha Vallabhaneni confirmed the seizure disorder

assessment and noted Plaintiff had mildly high liver enzymes. (Tr. 171.) Dr. Vallabhaneni also

instructed Plaintiff not to drive a motor vehicle due to her recurrent seizures. (*Id.*) At discharge

on March 25, 2004, Plaintiff was alert and oriented with stable blood pressure and pulse. (Tr.

172.)

 Dr. Manuel Porth of University Hospital performed two MRIs on Plaintiff in May and

July 2005. (Tr. 178–79.) On May 20, Dr. Porth conducted a cervical spine MRI on Plaintiff

after she complained of chronic neck pain that radiated to her left shoulder. (Tr. 179.) Dr. Porth

found "[n]o significant cord compression or intrinsic abnormality which would indicate

compressive myelopathy" and "[n]o osseous pathology of significance." (*Id.*) Although Dr.

Porth observed a small area of cerebral softening, its location suggested that Plaintiff had no

arachnoid cyst. (*Id.*) On July 12, Dr. Porth performed a lumbar spine MRI to investigate

Plaintiff's chronic back pain. (Tr. 178.) Dr. Porth observed mild degenerative disc and facet

disease, but no evidence of frank disc herniation or osseous pathology. (*Id.*)

 After filing for DIB and SSI, Plaintiff visited Dr. Albert Gomez on October 9, 2006, for a

consultative examination as part of her disability determination. (Tr. 209–19.) Dr. Gomez

administered a physical examination and made diagnostic impressions of cigarette abuse,

seizures, degenerative joint disease, Hepatitis C, alcohol abuse, and questionable cocaine abuse

(Tr. 211–12). Based on his examination, Dr. Gomez opined that Plaintiff could occasionally lift

twenty to thirty pounds in an eight-hour workday and stand or sit with normal breaks for at least

---

[3] Dilantin is a drug prescribed to treat seizures. (Tr. 40.)

six hours in an eight-hour workday. (*Id.*) Dr. Gomez measured Plaintiff's visual acuity without glasses as 20/200 in her right eye and 20/70 in her left. (Tr. 211.) Plaintiff's pulmonary-function test results were consistent with mild obstruction pre-medication and borderline obstruction post-medication, but Dr. Gomez considered the test "suboptimal" because Plaintiff was coughing throughout. (Tr. 212.)

On November 1, 2006, Dr. John Rawlings completed a Physical RFC Assessment as part of Plaintiff's disability determination, using her CSMC ER records from March 23, 2004, and the Gomez examination on October 9, 2006. (Tr. 220–27.) Regarding exertional limitations, Dr. Rawlings found that Plaintiff could lift a maximum of fifty pounds occasionally and twenty-five pounds frequently, and sit, stand, or walk for about six hours in an eight-hour workday. (Tr. 221.) Regarding postural limitations, Dr. Rawlings found Plaintiff could frequently stoop, crouch, crawl, and climb stairs, but only occasionally climb ladders or scaffolds. (Tr. 222.) Dr. Rawlings suggested that Plaintiff's poorly controlled seizure disorder precluded her from working as a commercial driver, at unprotected heights, or around dangerous machines. (Tr. 224.) Dr. Rawlings discounted the more restrictive weight limitations suggested by Dr. Gomez because the Gomez examination contained no evidence of basic strength impairment. (Tr. 226.)

Plaintiff visited Dr. Lou Ponce at least monthly from October 2006 until March 2007. (Tr. 255–62.) On December 14, 2006, Dr. Ponce performed his first physical examination of Plaintiff and reviewed her previous MRIs. (Tr. 260.) Dr. Ponce deemed Plaintiff's 2005 MRIs benign, but scheduled another cervical spine MRI in response to Plaintiff's complaints of worsening pain. (*Id.*) Dr. Ponce made diagnostic impressions of neck pain, seizure disorder, asthma, anxiety/depression, right hip osteoarthritis, and sleep disorder. (*Id.*)

7

Plaintiff saw Dr. Ponce on January 3, 2007, complaining of cough, congestion, dizziness, and body aches over the previous two days. (Tr. 259.) After an x-ray revealed that Plaintiff's congestion was consistent with bronchitis, Dr. Ponce made diagnostic impressions of acute bronchitis, chronic bronchitis, neck pain, and back pain. (*Id.*)

Plaintiff visited Dr. Ponce again on January 16, 2007, to undergo another physical examination and obtain refills on her medications. (Tr. 258.) During this visit, Dr. Ponce observed that Plaintiff suffered from neck pain, headaches, epilepsy, anxiety/depression, asthma, and chronic bronchitis. (*Id.*)

On February 15, 2007, Dr. Ponce indicated that Plaintiff's most recent MRIs were negative for significant abnormalities in her cervical spine and lumbar spine. (Tr. 256, 270.)

On June 26, 2007, Dr. Christopher Fletcher performed a Physical RFC Assessment as part of Plaintiff's disability determination. (Tr. 263–70.) Dr. Fletcher relied on Plaintiff's March 2004 CSMC ER records, 2005 MRIs, Dr. Gomez's October 2006 examination, and records from Dr. Ponce dating from December 2006 through March 2007. (Tr. 270.) Dr. Fletcher found that Plaintiff had no exertional or postural limitations, but was visually limited in the area of far acuity. (Tr. 264–66.) Because Plaintiff's CSMC ER records demonstrated a history of seizures, Dr. Fletcher suggested that Plaintiff avoid all exposure to environmental hazards, such as machinery and heights. (Tr. 267.) As with Dr. Rawlings's RFC Assessment, Dr. Fletcher discounted the more restrictive weight limitations in Dr. Gomez's examination as unsupported by objective medical evidence. (Tr. 269.) Dr. Fletcher reduced Plaintiff's RFC only for her visual limitations and seizure history, deeming Plaintiff's subjective complaints of pain "not wholly credible in light of only mild [degenerative disc disease], no nerve root involvement, [full range of motion] on exam," and normal gait, station, and strength. (Tr. 270.)

8

## 2. Psychological History

On December 22, 2006, Plaintiff visited Dr. Frederick Grieve for a psychological evaluation as part of her disability determination. (Tr. 229–34.) Dr. Grieve's evaluation consisted of a medical record review, personal interview, visual tests, mental status exam, and intelligence and achievement tests. (Tr. 229.) After interviewing Plaintiff and considering her medical history, Dr. Grieve diagnosed Plaintiff with the following conditions, while noting that her physical problems would have to be evaluated by a physician (Tr. 234): anxiety disorder, seizure disorder, Hepatitis C, chronic lung disease, neck and back pain, and a degenerative hip (Tr. 233). Dr. Grieve also assessed Plaintiff a global assessment of functioning ("GAF") score of 57 and diagnosed Plaintiff with bereavement, rather than depression, as her depressive symptoms started shortly after her husband's death. (*Id.*) Dr. Grieve found that Plaintiff was able to understand, retain, and follow simple instructions, and her ability to sustain attention to perform simple repetitive tasks was minimally impaired. (*Id.*) However, Dr. Grieve stated that Plaintiff's depression and anxiety severely limited her capacity to relate to others psychologically. (*Id.*) When combined with her seizure problems, Dr. Grieve found Plaintiff to be severely limited in tolerating the stress and pressure of normal work activity. (*Id.*) Dr. Grieve considered these assessments valid because Plaintiff appeared to be motivated to perform her best on the various tests. (Tr. 231.)

On December 30, 2006, Dr. Edward Stodola performed a psychiatric review as part of Plaintiff's disability determination. (Tr. 235–48.) Dr. Stodola found that Plaintiff had mild limitations in her activities of daily living and maintaining social functioning, with moderate limitation in maintaining concentration, persistence, or pace. (Tr. 245.) Based on Plaintiff's

9

bereavement (Tr. 238) and an unspecified anxiety disorder (Tr. 240), Dr. Stodola recommended that Plaintiff undergo an RFC Assessment (Tr. 235).

Dr. Stodola completed a Mental RFC Assessment that same day, concluding in Section I that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods. (Tr. 249.) Dr. Stodola also found moderate limitations in Plaintiff's ability to interact appropriately with the general public and respond appropriately to changes in the work setting. (Tr. 250.) Following Section III's instruction to explain his Section I findings, Dr. Stodola surmised that Plaintiff was mentally able: to understand, remember, or carry out simple and detailed instructions for two-hour segments over an eight-hour period, five days per week; to relate adequately in object focused settings; and to adapt to the changes and pressures of a routine setting. (*Id.*)

On August 22, 2007, Dr. Larry Welch performed a psychiatric review using Plaintiff's medical records, as part of Plaintiff's disability determination. (Tr. 271–84.) Dr. Welch rated Plaintiff as mildly limited in her activities of daily living and maintaining social functioning, and moderately limited in maintaining concentration, persistence, or pace. (Tr. 281.) Based on Plaintiff's history of cocaine and alcohol abuse (Tr. 279), as well as unspecified affective (Tr. 274) and anxiety-related disorders (Tr. 276), Dr. Welch recommended that Plaintiff undergo an RFC Assessment (Tr. 271).

Dr. Welch completed a Mental RFC Assessment that same day, indicating in Section I that Plaintiff had a moderately limited ability: to understand and remember very short and simple instructions; to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to sustain an ordinary routine without special supervision; to complete a normal work-day and work-week without

10

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to respond appropriately to changes in the work setting. (Tr. 285–86.) In Section III, Dr. Welch stated that Plaintiff was able to understand, remember, and complete detailed tasks on a regular and continual basis with occasional difficulty sustaining concentration, persistence, or pace. (Tr. 287.) Dr. Welch also explained that Plaintiff could adapt to routine, but not frequent or fast-paced change; should avoid major hazards and take most transportation independently; and could set and carry out most long-range goals with only occasional assistance. (*Id.*)

### 3. Employment History

At the June 16, 2009, hearing, Plaintiff testified about her past work and education experience, as well as limitations that prevented her from performing any type of substantial gainful activity. (Tr. 35–37, 45.) VE Anchor also testified regarding the employment opportunities that exist in the national economy for a person with the hypothetical limitations described in the ALJ's RFC statement. (Tr. 46–51.)

Plaintiff testified that she completed the ninth grade, did not earn a GED, and received no vocational training. (Tr. 35.) Regarding basic work skills, Plaintiff testified that she could read, write, add, and subtract. (Tr. 34.) Plaintiff testified that she occasionally attended church and had no problems interacting with people at the grocery store. (Tr. 42–43.) Plaintiff testified that she has held a number of jobs in the past, including working as a forklift driver in 2008 and a gas station worker in 2005. (Tr. 36–37.) Although she tried to maintain employment, Plaintiff stated that seizures prevented her from doing so. (Tr. 36.) Plaintiff insisted she could not work because every time she tried to secure a job, she was turned down or fired. (Tr. 45, 52.)

11

ALJ Daughtry posed a series of hypotheticals to VE Anchor at the hearing, asking him whether an individual of Plaintiff's age, education, work, and RFC level could perform any jobs that exist in the national or regional economy. (Tr. 47–51.) The ALJ presented three different hypothetical constructions based on Plaintiff's RFC, but adopted the second hypothetical as Plaintiff's RFC in the fifth finding of fact and conclusion of law in his decision denying Plaintiff's claims. (Tr. 19–20, 47–49.) Based on limitations described in this hypothetical, VE Anchor testified that Plaintiff could not perform any past work because she could not deal with the public. (Tr. 49.) However, the VE stated that Plaintiff could perform other jobs that exist in the national or regional economy, such as table worker, packer, and poultry cleaner. (Tr. 49–50.)

## II.  STANDARD OF REVIEW

The Court's review of the Magistrate's Report is *de novo*. 28 U.S.C. § 636(b) (2012). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2012). Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

12

A finding of substantial evidence holds significant weight on appeal. "Where substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999); *see also Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the court would have come to different factual conclusions as to the plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

## III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

Plaintiff raises three objections to the Report. (Doc. No. 31.) First, Plaintiff argues that Judge Knowles erred in finding that ALJ Daughtry properly weighed the opinion of non-examining physician Dr. Welch over that of examining physician Dr. Grieve. (*Id.* at 2.) Dr. Grieve concluded that Plaintiff was severely impaired in her ability to relate psychologically to others and to tolerate the stress and pressure of normal work activity. (Tr. 233.) Judge Knowles found support for the ALJ's decision to disfavor these severe limitations in the narrative within Dr. Grieve's own report, Dr. Welch's Mental RFC Assessment, and Plaintiff's testimony at the hearing. (Doc. No. 30 at 13–16.) Plaintiff argues that only Dr. Welch's assessment provides evidence inconsistent with Dr. Grieve's findings, and that Dr. Welch's opinion should be discounted because he did not examine Plaintiff. (Doc. No. 31 at 2–3.)

13

The second and third objections draw extensively on the Sixth Circuit's opinion in *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 515–17 (6th Cir. 2010), regarding ALJ hypotheticals posed to VEs at administrative hearings to elicit testimony about a claimant's ability to perform work that is available in the national economy. (Doc. No. 31 at 3–8.) Even if reliance on Dr. Welch's assessment was appropriate, Plaintiff argues, Judge Knowles erred in finding that ALJ Daughtry's hypothetical provided VE Anchor with an adequate description of the assessment. (*Id.* at 4–8.) Plaintiff contends that the hypothetical was deficient in two ways: first, ALJ Daughtry omitted limitations found in Section I of Dr. Welch's Mental RFC Assessment (*id.* at 4–5); and, second, the ALJ misrepresented the Section III findings (*id.* at 5).

### A. Weight Given to Drs. Grieve and Welch

Plaintiff first argues that ALJ Daughtry erred by assigning more weight to non-examining physician Dr. Welch's opinion than to portions of examining physician Dr. Grieve's opinion. (Doc. No. 31 at 2.) Regulations require the SSA to evaluate all medical opinions in a claimant's file. 20 C.F.R. §§ 404.1527(c), 416.927(c) (2013). An ALJ presumptively assigns the most weight to a treating physician, and generally more weight "to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* §§ 404.1527(c)(1–2), 416.927(c)(1–2). Unless a physician's opinion controls under 20 C.F.R. § 404.1527(c)(2), an ALJ may reject a treating physician's opinion after considering the appropriate factors and adhering to the stringent requirement to provide good reasons for deviating from the presumption. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875–76 (6th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).

When rejecting the opinion of an examining or non-examining source, an ALJ considers the variety of factors set forth in the regulations, including the nature of the treatment

14

relationship, the supporting evidence presented by the physician, consistency with the record as a whole, whether the physician is a specialist in the area, and any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1–6), 416.927(c)(1–6).

As a threshold matter, because they did not establish an ongoing treatment relationship with Plaintiff, neither Dr. Grieve nor Dr. Welch qualifies as a treating source whose opinion may control the disability determination and bind the ALJ. *See id.* §§ 404.1502, 416.902. Therefore, their respective examining and non-examining status was only one of several relevant factors in ALJ Daughtry's analysis. *See id.* §§ 404.1527(c)(1–6), 416.927(c)(1–6).

Here, the ALJ considered the opinions of Dr. Greive and Dr. Welch for consistency with the record as a whole. ALJ Daughtry found that the moderate limitations described by Dr. Welch were "consistent with claimant's medical records," and therefore gave them weight "despite his status as a non-treating and non-examining individual." (Tr. 22.) The ALJ also deemed portions of Dr. Grieve's assessment to be "consistent with the record as a whole." (*Id.*) For instance, the ALJ gave substantial weight to Dr. Grieve's findings that Plaintiff had a moderate GAF score of 57, a capacity to perform simple repetitive tasks, and an ability to understand, retain, and follow simple directions. (*Id.*) Regarding Dr. Grieve's conclusions that Plaintiff was severely impaired in her ability to psychologically relate to others and tolerate the stress and pressure of normal work activity, ALJ Daughtry found that the record supported a lower level of impairment. (*Id.*) He accounted for a lesser restriction in these areas by finding that Plaintiff had moderate difficulties in social functioning and precluding her from production-pace assembly line work. (Tr. 19–20.)

Plaintiff argues that Dr. Welch's opinion is the only evidence in the record inconsistent with the severe impairments described by Dr. Grieve, and that all aspects of Dr. Grieve's opinion

15

should therefore be favored over Dr. Welch's assessment because Dr. Welch did not examine Plaintiff. (Doc. No. 31 at 2–3.) Although it is true that Dr. Welch's findings provide the clearest contrast with the severe impairments described by Dr. Grieve, as Judge Knowles found in the Report, additional discrediting evidence exists in Plaintiff's testimony and the internal inconsistencies of the Grieve assessment. (Doc. No. 30 at 13–16.) For instance, Plaintiff testified that she had no trouble interacting with people at the grocery store and occasionally attended church. (Tr. 42–43.) The Court finds that these activities support something less than a severe impairment in psychologically relating to others. Plaintiff is correct in arguing that they have limited bearing on her ability to tolerate the stress of normal work activity. (Doc. No. 31 at 2.) However, the ALJ accounted for Plaintiff's difficulties in dealing with normal work stress by finding Plaintiff unable to work on an assembly line, at production pace, or to interact regularly with the public. (Tr. 19–20.)

As to the internal narrative of Dr. Grieve's assessment, the Court finds substantial evidence supporting both the ALJ's analysis and Plaintiff's objection. Therefore, the Court upholds the Commissioner's determination that the ALJ properly discounted the severe limitations from Dr. Grieve's assessment, as it must where there is substantial evidence on both sides. *Her*, 203 F.3d at 389. ALJ Daughtry addressed the conflicting evidence by stating that "[t]he claimant has good relationships with her family members, but has expressed that she is socially isolated and does not have an interest in obtaining or maintaining friendships." (Tr. 19.) Substantial evidence corroborating Dr. Grieve's conclusions includes Plaintiff's indications that she has no friends, remains isolated at home, and is uninterested in obtaining and maintaining friendships. (Tr. 230.) An HTTP test, which "assesses major patterns of personality and emotional functioning," suggested that Plaintiff was socially isolated. (Tr. 233.) On the other

16

hand, substantial evidence undermining Dr. Grieve's conclusions includes observations that Plaintiff had "average" social judgment (Tr. 232) and "good relationships with her mother, daughter, and son" (Tr. 230). A BSI-III test, which reflects psychological symptom patterns using a subject's responses, indicated that Plaintiff had no psychological difficulties. (Tr. 233.)

Evaluating the record as a whole, ALJ Daughtry's decision to discredit the severe impairments described by examining physician Dr. Grieve in favor of non-examining physician Dr. Welch is supported by substantial evidence. Therefore, Plaintiff's argument is without merit.

### B.    *Adequacy of the ALJ's Hypothetical*

Plaintiff's other arguments relate to the adequacy of ALJ Daughtry's hypothetical posed to VE Anchor and on which the ALJ relied in finding that Plaintiff could perform jobs that exist in significant numbers in the national economy. (Doc. No. 31 at 3–8.) "In order for a VE's testimony to constitute substantial evidence that a significant number of jobs exists, 'the question[s] must accurately portray a claimant's physical and mental impairments.'" *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (alteration in original) (citing *Ealy*, 594 F.3d at 516). However, the hypothetical must incorporate only those impairments deemed credible by the ALJ. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927–28 (6th Cir. 1987). The Sixth Circuit has found that it is reversible error where an ALJ's hypothetical fails to provide a fair summary of the restrictions described in a properly credited RFC Assessment. *See Ealy*, 594 F.3d at 516–17.

A Mental RFC Assessment has three sections. *Id.* at 515. Section I, titled "Summary Conclusions," consists of twenty individual mental activities. *Id.* These activities are divided into four categories: understanding and memory, sustained concentration and persistence, social

17

interaction, and adaptation. (Tr. 285–86.) Section I's directions instruct the evaluator to appraise a person's capacity to sustain each activity over a normal work-day and work-week by checking one of five boxes located next to the activity: not significantly limited, moderately limited, markedly limited, no evidence of limitation in this category, and not ratable on available evidence. *Ealy*, 594 F.3d at 515. If an evaluator checks the fifth box—not ratable—for any activity, he or she must use Section II, titled "Remarks," to specify what additional documentation is needed to make a rating. (Tr. 286.) Section III, titled "Functional Capacity Assessment," directs the evaluator to complete Section I first and then to explain the summary conclusions in narrative form. *Ealy*, 594 F.3d at 515. According to Section I's directions, the evaluator in Section III provides a detailed explanation of the degree of limitation for each category and any other assessment information deemed appropriate. *Id.*

Plaintiff contends that ALJ Daughtry did not accurately portray the mental limitations described in Dr. Welch's Mental RFC Assessment when constructing his hypothetical. (Doc. No. 31 at 3–8.) Plaintiff's argument is two-fold: first, that the ALJ omitted the Section I limitations (*id.* at 4), and second, that the ALJ misrepresented the Section III findings (*id.* at 5). If Plaintiff prevails on her Section III misrepresentation argument, the Court must remand the case. *See Ealy*, 594 F.3d at 516. Thus, the Court addresses this argument first.

1.      Section III Misrepresentation

Plaintiff takes issue with the ALJ's description of the Section III findings in Dr. Welch's Mental RFC Assessment, in which Dr. Welch described limitations in understanding and memory, sustained concentration and persistence, and adaptation. (Doc. No. 31 at 5.) In *Ealy*, the Sixth Circuit reversed a district court judgment upholding the Commissioner's finding that a claimant was not disabled because the claimant's limitations were not fully conveyed to the VE

18

through the ALJ's controlling hypothetical. *Ealy*, 594 F.3d at 516–17. The ALJ gave substantial weight to a Mental RFC Assessment by a doctor that included the Section III finding that the claimant could sustain attention to complete simple repetitive tasks for two-hour segments over an eight-hour day where speed was not critical. *Id.* at 516. In the controlling hypothetical, the ALJ instructed the VE to "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id.* The Court found that this instruction was inadequate because it entirely omitted the speed and pace restrictions set forth by the doctor in his Section III finding and ostensibly endorsed by the ALJ. *Id.*

Here, Plaintiff argues that VE Anchor was not asked to consider Dr. Welch's Section III findings that Plantiff is limited to routine changes, requires assistance for setting and carrying out goals in a work setting, and has occasional difficulty with concentration, persistence, and pace. (Doc. No. 31 at 5.)

The Court finds that the ALJ's hypothetical provided the VE with a fair summary of the restrictions recorded in Section III of Dr. Welch's properly credited Mental RFC Assessment. ALJ Daughtry was not required to recite Dr. Welch's Section III findings verbatim in the hypothetical, as long as he accurately portrayed the conclusions. *See Cole*, 661 F.3d at 939 (citing *Ealy*, 594 F.3d at 516). In the portion of Section III addressing Plaintiff's adaptation restrictions, Dr. Welch found that Plaintiff was "[a]ble to adapt to routine, not frequent or fast-paced change." (Tr. 286–87.) The ALJ accounted for this restriction in the hypothetical, stating that Plaintiff "can adapt to gradual [in]frequent changes in the work environment."[4] (Tr. 49.) Essentially, the ALJ omitted just the word "routine." In this context, the word "routine" does not

---

[4] The administrative transcript incorrectly reads "and frequent," rather than "infrequent." (Doc. No. 25 at 3.)

apply an additional restriction, as it encompasses a range of customary activities. Therefore, its omission did not unfairly portray Dr. Welch's conclusion.

Dr. Welch also found that Plaintiff is "[a]ble to set and carry out most long-range goals with only occasional assistance," a positive explanation of Plaintiff's capacity for adaptation. (Tr. 287.) Plaintiff overstates the restrictive intent of this statement by simply recognizing a need for assistance and not that it is "only occasional" or that it applies to "long-range goals." (Doc. No. 31 at 5.) ALJ Daughtry compensated for this minor difficulty with long-range goals by stipulating that Plaintiff may only perform one-to-two step tasks, which are short-term by nature. (Tr. 49.) Finally, Dr. Welch found that Plaintiff would have "occasional difficulty sustaining" concentration, persistence, and pace. (Tr. 287.) The ALJ directly addressed Plaintiff's difficulties in concentration and persistence by restricting Plaintiff to "routine, repetitive one-to-two step tasks." (Tr. 49.) Regarding pace limitations, the ALJ constrained Plaintiff to "a work environment that does not involve production rate pace assembly line work." (*Id.*) Because ALJ Daughtry satisfied the *Ealy* standard by fairly summarizing all of Dr. Welch's Section III findings in his hypothetical, Plaintiff's objection is unsuccessful.

### 2.     Section I Omissions

Plaintiff also argues that, in this context, Dr. Welch's Section I findings have independent meaning for which the ALJ must account. (Doc. No. 31 at 4–5.) Specifically, Plaintiff contends that ALJ Daughtry's hypothetical did not individually address each of the Section I activities in which Dr. Welch marked Plaintiff as limited, and that these omissions produced inadequate vocational testimony because some Section I findings were not reflected in Section III. (*Id.*)

The *Ealy* Court found that the ALJ did not provide a "fair summary" of a Section III finding in the hypothetical, and that this failure rendered the ALJ's description of the claimant's

20

overall limitations inadequate. *Id.* at 516–17. Although this holding applies directly to only Section III, the Court briefly discussed the issue of Section I findings omitted from an ALJ's hypothetical. *Ealy*, 594 F.3d at 516. The Court reasoned that if an evaluator sufficiently incorporates Section I into Section III, an ALJ's fair summary of Section III alone is likely an adequate description of overall limitations. *See id.* at 516. However, the Court explicitly did not provide guidance on how an ALJ must treat Section I findings that are not sufficiently incorporated into Section III, declining to resolve the issue because it ruled on Section III grounds. *Id.* Although an ALJ is not required to recite all assessed limitations verbatim in a hypothetical, the *Ealy* ruling thus maintains the possibility that an ALJ must provide a fair summary of insufficiently incorporated Section I restrictions in addition to Section III. *See id.*

Plaintiff recognizes that *Ealy* did not decide whether or in what circumstances an ALJ must fairly summarize Section I limitations, but argues that the ALJ's omissions warrant remand in this case because there were unexplained inconsistencies between Dr. Welch's Section I and Section III findings. (Doc. No. 31 at 4–5.) The Commissioner responds that ALJ Daughtry rightfully omitted Dr. Welch's Section I findings from the hypothetical because Section I of a Mental RFC Assessment has little to no value in determining Plaintiff's RFC beyond aiding the completion of the controlling Section III. (Doc. No. 32 at 2–4.) The Court has found no Sixth Circuit case that supports the Commissioner's broad suggestion, and *Ealy* does not address it. *See Ealy*, 594 F.3d at 515–17.

However, even if the Court were to apply *Ealy*'s holding to Section I, the Court finds that the ALJ's omission of Section I limitations in this case did not affect the otherwise adequate description of Plaintiff's overall limitations in the hypothetical. Of the twenty activities evaluated in Section I, Dr. Welch checked a box signifying limitation in only seven. (Tr. 285–

21

86.)  For all seven, Dr. Welch found Plaintiff to be "moderately limited" rather than the more

severe "markedly limited."  (*Id.*)  Three of these seven were clearly incorporated into Section III.

(Tr. 285–87.)  Plaintiff's assessed Section I limitations in maintaining attention and

concentration for extended periods, and performing at a consistent pace are both addressed by

the Section III finding that Plaintiff has occasional difficulty sustaining concentration,

persistence, and pace.  (Tr. 287.)  The assessed Section I limitation in responding appropriately

to changes in the work setting is reflected in the Section III finding that Plaintiff cannot adapt to

frequent or fast-paced change.  (*Id.*)

       While Plaintiff is correct that there are some remaining inconsistencies between Section I

and Section III, the Court finds that three of the remaining four inconsistent limitations are

nonetheless directly addressed in the hypothetical.  Dr. Welch checked Section I limitations in

Plaintiff's ability to: (1) understand and remember very short and simple instructions; (2)

understand and remember detailed instructions; and (3) carry out detailed instructions.  (Tr. 285.)

The ALJ incorporated these three limitations in the hypothetical by restricting Plaintiff to

routine, repetitive one-to-two step tasks.  (Tr. 49.)

       Only one Section I restriction remains that is neither incorporated into Section III nor

directly addressed in the ALJ's hypothetical—a moderate limitation in Plaintiff's ability to

sustain an ordinary routine without special supervision.  (Tr. 285.)  Considering that this is a

single unaccounted-for inconsistency and that all Section I activities were marked only

"moderately limited," the Court finds the ALJ's omission of this Section I finding did not affect

the adequacy of the ALJ's description of Plaintiff's overall limitations.

       Unlike in *Ealy*, remanded on the basis of an inadequately described Section III finding,

the ALJ here fairly summarized Dr. Welch's Section III findings in his hypothetical.  *Ealy*, 594

F.3d at 516. Although one omitted Section I limitation was arguably inconsistent with Section III, it was only one of twenty assessed activities and moderately—rather than markedly—severe. Thus, the Court finds that the resulting hypothetical adequately described Plaintiff's overall limitations and that VE Anchor's subsequent testimony constitutes substantial evidence on which the ALJ properly relied in his making determination that Plaintiff is not disabled. Therefore, the Court is obliged to affirm the ALJ's ruling.

## IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report, **DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of the Commissioner. This Order terminates this Court's jurisdiction over the above-captioned action, and the case is **DISMISSED**. The Clerk of the Court is **DIRECTED** to close the case.

It is so ORDERED.

Entered this_____ day of August, 2013.


_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

23